**NOT FOR PUBLICATION**

| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
|---|---|
| In Re: Global Protection USA, Inc., Debtor | Case No.: 12-16322 -ABA<br>Chapter: 7<br>Judge: Andrew B. Altenburg, Jr. |

Order Filed on January 13, 2015
by Clerk
U.S. Bankruptcy Court
District of New Jersey

| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
|---|---|
| The Official Committee of Unsecured Creditors of Global Protection USA, Inc., Plaintiff<br><br>v.<br><br>Susquehanna Bank, Defendant. | Adv. No.: 12-01879-ABA<br>Hearing Date: December 19, 2014<br>Judge: Andrew B. Altenburg, Jr. |

| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
|---|---|
| Andrew Sklar, Chapter 7 Trustee of the Bankruptcy Estate of Global Protection USA, Inc., Plaintiff<br><br>v.<br><br>Stephen Guarino et al., Defendants. | Adv. No.: 14-01299-ABA<br>Hearing Date: December 19, 2014<br>Judge: Andrew B. Altenburg, Jr. |

**DATED: January 13, 2015**

**MEMORANDUM DECISION**

_Honorable Andrew B. Altenburg, Jr._
_United States Bankruptcy Court_

**Findings of Fact**

This matter is before the court on motions filed in two different adversary proceedings within the Global Protection USA, Inc. (the "Debtor") bankruptcy case. The first adversary proceeding is *The Official Committee of Unsecured Creditors of Global Protection USA, Inc. v. Susquehanna Bank* (the "Bank Adversary"). *See* Case No. 12-01879. The second adversary proceeding is *Andrew Sklar, Chapter 7 Trustee of the Bankruptcy Estate of Global Protection USA, Inc. v. Guarino et al*. (the "Guarino Adversary"). *See* Case No. 14-01299.

In the Bank Adversary, Stephen Guarino ("Mr. Guarino") was subpoenaed as a witness to testify on behalf of Defendant Susquehanna Bank. Mr. Guarino filed a Motion for a Protective Order by Staying the Adversary Proceeding (the "Bank Case Motion") on November 4, 2014 by and through his counsel Harold G. Cohen, Esquire of Dilworth Paxson LLP. *See* Document No. 79 on the Docket in the Bank Adversary. Mr. Guarino seeks the relief requested because of a pending criminal action against him in Los Angeles County Superior Court, Case No. BA425235 (the "Criminal Proceeding"). Mr. Guarino seeks a stay of the entire case until the conclusion of the Criminal Proceeding. The Defendant, Susquehanna Bank, filed a Statement of Non-Opposition to Bank Case Motion by and through its counsel William G. Wright, Esquire of Capehart & Scatchard, P.A. *See* Document No. 81 on the Docket in the Bank Adversary. The Trustee then filed an Objection to the Bank Case Motion by and through his counsel, John S. Mairo, Esquire and Kelly D. Curtin, Esquire of Porzio Bromberg & Newman, P.C. *See* Document No. 82 on the Docket in the Bank Adversary. Mr. Guarino filed a Reply in response to the Objection. *See* Document No. 83 on the Docket in the Bank Adversary.

In the Guarino Adversary, Stephen Guarino, Kathleen Guarino, ASKAT LLC, Global Safety, LLC,[1] Rhino Pet Series 6 LLC, Rhino Pet Series 7 LLC, Rhino Pet Series 24 LLC, SKYE-NZAPT Trust, Loveladies Nevada Asset Protection Trust (LNVAPT) and Cherry NVAPT (the "Guarino Defendants"), in light of the Criminal Proceeding, likewise filed a Motion for a Stay of Adversary Proceeding (the "Guarino Case Motion") on November 4, 2014 by and through their counsel, Harold G. Cohen, Esquire. *See* Document No. 37 on the Docket in the Guarino Adversary. The Guarino Defendants seek a stay of the entire case until the conclusion of the Criminal Proceeding. The Trustee filed an Objection to the Guarino Case Motion by and through his counsel John S. Mairo, Esquire and Kelly D. Curtin, Esquire. *See* Document No. 40 on the Docket in the Guarino Adversary. Finally, the Guarino Defendants filed a Reply to the Objection. *See* Document No. 43 on the Docket in the Guarino Adversary.

The Criminal Proceeding relates to the Debtor's warehousing and disposition of respirator masks purchased by the California Department of Public Health ("CDPH"). Mr. Guarino is personally named in the Criminal Proceeding as an officer of the Debtor. Mr. Guarino and the Guarino Defendants request a stay of the cases on the grounds that Mr. Guarino will be

---

[1] Global Safety, LLC is a d/b/a for Global Medical, LLC.

unable to testify effectively in either the Bank Adversary or the Guarino Adversary prior to the conclusion of the Criminal Proceeding alleging that any testimony Mr. Guarino would be required to give before the bankruptcy court could be used against him in the Criminal Proceeding and therefore infringe upon his Fifth Amendment rights. Furthermore, in the Guarino Case Motion, the Guarino Defendants allege that "[t]he Amended Complaint is rife with Trustee's allegations that Guarino is inextricably intertwined with each and all of the other Defendants." *See* Document No. 37 at paragraph 34 in the Guarino Adversary. Guarino's criminal defense attorney has advised Mr. Guarino not to provide affidavits, certifications, testimony, or discovery in either case in order to safeguard his Fifth Amendment right against self-incrimination.

The court held a hearing on these motions on December 19, 2014 (the "December 19 Hearing") at which time the parties appeared and the court heard arguments of counsel. At that time the Guarino Defendants averred that Mr. Guarino will assert his Fifth Amendment privilege in all circumstances in both the Bank Adversary and the Guarino Adversary since any answers Mr. Guarino might otherwise supply could impact the Criminal Proceeding. They argued that since the California criminal law enforcement officials have so inconceivably misconstrued Mr. Guarino's conduct, and because Mr. Guarino is so intimately intertwined with each and all of the other Defendants in the Guarino Adversary, any testimony and/or responsive pleading may be further distorted by the criminal law enforcement officials. Moreover, it is necessary for Mr. Guarino to testify in the Bank Adversary because he may have personal exposure should the Trustee prevail.

In response, the Trustee, *inter alia*, points out that the factual allegations in the adversary proceedings bear no significant relationship to the allegations in the Criminal Proceedings. Moreover, the Trustee alleges that it is he, and not the Guarino Defendants, who would be prejudiced by a stay of the cases.

## **Conclusions of Law**

The decision to grant a stay is within the discretion of the trial court. A recent New Jersey District Court case stated:

> It is well settled that the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes [sic] on its docket with economy of time and effort for itself, for counsel, and for litigants [in mind]. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

*Colombo v. Bd. of Educ. for the Clifton Sch. Dist.*, No. 11-00785 (CCC), 2011 WL 5416058, at *2 (D.N.J. Nov. 4, 2011) (internal citations omitted) (citing *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936) (granting a stay in a case where the defendant was "both a defendant in [a] law suit as well as the subject of a criminal investigation and indictment" causing his "Fifth

Amendment right against self-incrimination" to be at issue)). "When a defendant has been indicted, his situation is particularly dangerous, and takes a certain priority, for the risk to his liberty, the importance of safeguarding his constitutional rights, and even the strain on his resources and attention that makes defending satellite civil litigation particularly difficult, all weigh in favor of his interest." *Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 577 (S.D.N.Y. 2001) (finding that the balance of interests in that case militated against the imposition of a stay).

In order to receive a stay, a movant "must demonstrate a clear case of hardship or inequity, if there is even a fair possibility that the stay would work damage on another party." *Colombo*, 2011 WL 5416058, at *2 (citing *Gold v. Johns-Mansville Sales Corp.*, 723 F.2d 1068, 1075-76 (3d Cir. 1983)). In considering whether or not to grant a stay, courts consider the test set forth in the case of *Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 526 (D.N.J. 1998). Those factors include:

> 1) the extent to which the issues in the criminal and civil cases overlap; 2) the status of the case, including whether the defendants have been indicted; 3) the plaintiff's interest in proceeding expeditiously weighed against the prejudice to plaintiff caused by a delay; 4) the private interests of and burden on defendants; 5) the interests of the court; and 6) the public interest.

*Id.*

In an Eastern District of California case, a district court reversed a bankruptcy court's decision denying a stay in a case where the "primary leader" of a Chapter 11 debtor was involved in an adversary proceeding and had a pending federal indictment. *In re SK Foods, L.P.*, No. S-10-1492 LKK, 2010 WL 5136189 (E.D. Cal. Dec. 10, 2010). The bankruptcy court in that case had found that "with one minor exception, the factual allegations in the adversary proceedings [bore] no significant relationship to the allegations in the indictment," but the district court disagreed, stating:

> While the Bankruptcy Court may be correct that specific allegations of the criminal indictment are, for the most part, distinct from the specific allegations of the adversary proceedings, its conclusion that these distinctions demonstrate that Salyer's Fifth Amendment rights are not implicated is clearly erroneous. As an initial matter, the assets sought in the criminal forfeiture proceedings overlap to a significant degree with the assets sought in the adversary proceedings. Moreover, Salyer's Fifth Amendment rights are implicated any time that he testifies or responds to discovery requests that are admissible to prove that he engaged in the conduct alleged in the indictment. This conduct can exceed the specific allegations of the indictment. Specifically, under Fed. R. Evid. 404(b), evidence of crimes, wrongs, and acts not alleged in the indictment, may be used to prove

> "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Under this rule, for example, evidence that Salyer fraudulently transferred assets might be used to prove that Salyer intended to commit the fraudulent acts alleged in the indictment, or had a plan to conceal fraudulently obtained assets. Indeed the asserted concealment of assets was a predominant governmental theme relative to bail.
>
> Put directly, even though the specific allegations of the indictment and the adversary proceedings may differ, the bankruptcy litigation seriously implicates Salyer's Fifth Amendment rights.

*Id.* at *7. In a later opinion, the District Court revisited its December 10th Opinion and clarified:

> The court [in its December 10th Opinion] found that the due process rights of Appellants may be infringed if they cannot adequately defend themselves in the adversary proceedings without discovery from or testimony of Salyer, who cannot be compelled to testify under the Fifth Amendment, or his criminal counsel, who cannot be compelled to violate the attorney-client privilege.

*In re SK Foods, L.P.*, No. S-10-1492 LKK, 2011 WL 1442332, at *1 (E.D. Cal. Apr. 14, 2011). It continued:

> Thus, the court is remanding the case to the Bankruptcy Court to decide, in the first instance, whether discovery from or testimony of Salyer or his criminal counsel is reasonably necessary to dispose of a particular matter before the Bankruptcy Court in the adversary proceedings. A matter is reasonably necessary if Appellants cannot adequately defend themselves in an adversary proceeding without evidence from Salyer or his criminal counsel.

*Id.*

The *SK Foods* cases are instructive on the potential ramifications of allowing an adversary proceeding to proceed in the face of a criminal indictment and this court is persuaded by their reasoning. In particular, the *SK Foods* cases highlight the potential impact invoking a Fifth Amendment privilege in an adversary proceeding can have on both the person invoking that right and on all of his or her co-defendants or other parties who may be unable to adequately defend themselves without testimony from the party pleading the Fifth Amendment.Although he is not a party to the Bank Adversary Mr. Guarino, may ultimately benefit from the Bank successfully defending itself. Mr. Guarino has taken his need to testify in the Bank Adversary so seriously that he, rather than the Bank (that presumably wants his unrestricted testimony), filed the Bank Case Motion. As argued by his attorney, Mr. Guarino was the person in control of all of the Debtor's transactions giving rise to, and is the central player in, all of the Trustee's causes of action. His testimony therefore, is crucial to the Bank's defense. However, as stated by his

counsel, because of the allegedly absurd nature of the charges brought in the Criminal Proceeding, Mr. Guarino, genuinely believes <u>any</u> testimony[2] he may give may be misinterpreted and distorted in an effort to build a criminal case against him.

This latter argument, of course is not a basis for invoking a Fifth Amendment privilege—indeed, to the extent that Mr. Guarino professes his innocence, it is curious what he believes he may not testify about. *See* <u>Kastigar v. United States</u>, 406 U.S. 441, 445 (1972) (the privilege "protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution [to incriminate him] or could lead to other evidence that might be so used.") Nevertheless,Mr. Guarino has declared that he will plead the Fifth Amendment in the pending adversary proceedings if they go forward at this time. In fact, rightly or wrongly, Mr. Guarino's criminal counsel instructed him not to testify.

Thus, though the trustee/plaintiff wishes to proceed expeditiously, it is clear to this court from the litigation history of this case that putting Mr. Guarino on the stand in these adversary proceedings prior to the resolution of the Criminal Proceeding will greatly delay the proceedings. It is expected from the arguments set forth already that Mr. Guarino will attempt to invoke a Fifth Amendment privilege throughout the trials and in the pleadings. Upon objection, the court will have to rule on each and every invocation. In evaluating every invocation of the privilege, the court must employ a two-step analysis: first, whether there is "a conceivable possibility that the witness could be linked to a crime"; and second, "whether the questions asked have a tendency to incriminate." *In re Gi Yeong Nam*, 245 B.R. 216, 225 (Bankr. E.D. Pa. 2000) (citing *American Cyanamid Company v. Sharff*, 309 F.2d 790 (3d Cir.1962)).

The court weighs this burden against the possibility that the Criminal Proceeding resolves issues implicated here, allowing the adversary proceeding trials to progress smoothly. This convenience to the court supports entering a stay of the proceedings. As stated in *Shirsat v. Mut. Pharm. Co.*, No. CIV.A 93-3202, 1995 WL 695109, at *3 (E.D. Pa. Nov. 21, 1995):

> Simultaneous cases present the potential of duplication of judicial effort. *Golden Quality,* 87 F.R.D. at 57. Thus, if the government's success in the prosecution of the criminal case leads to a possibility that a court will be relieved of a substantial amount of work in the civil case, this factor militates in favor of granting a stay. *Id.* Moreover, convenience to a court will militate in favor of a stay where the outcome of a criminal case can be expected to remove the predicate for the assertions of the Fifth Amendment rights against self-incrimination by potential deponents and lighten the work load of a court to review those assertions. *See id.* at 58; *Mid–Atlantic Toyota,* 92 F.R.D. at 360.

Moreover, to the extent that Mr. Guarino may validly invoke a Fifth Amendment privilege not to answer certain questions, the proceedings would then be decided on the court's

---

[2] Including testimony about violations of the cash collateral order.

assigning an adverse inference to the refusal to testify, *see Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) ("the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them"), rather than being able to rule on a full record.

The court believes that Mr. Guarino's testimony is reasonably necessary to dispose of the Trustee's causes of action. The court further believes that the Bank cannot adequately defend itself without Mr. Guarino's testimony.[3] While the Criminal Proceeding does not prevent Mr. Guarino from testifying, here, it will complicate matters. Because Guarino's reluctance to testify in the Bank Adversary is directly related to the Criminal Proceeding, the court concludes that the matters sufficiently overlap.

Likewise, the Guarino Adversary and the Criminal Proceeding overlap. Setting aside the familiar allegations concerning the Debtor's warehousing and disposition of respirator masks purchased by the CDPH, the concerns that Mr. Guarino's testimony may be misconstrued in the Criminal Proceeding remain. Because of these concerns, Guarino has stated that he will plead the Fifth Amendment in the Guarino Adversary as instructed by his criminal counsel. Since Guarino is admittedly and inextricably intertwined with each and all of the other defendants, those defendants cannot defend themselves without Mr. Guarino's involvement. Again, the court believes that Mr. Guarino's testimony is reasonably necessary to address the Trustee's causes of action. The court further believes that the Guarino Defendants cannot adequately defend themselves without Mr. Guarino's testimony, adverse inferences notwithstanding.[4] The Criminal Proceeding may prevent Mr. Guarino from testifying. If Guarino cannot testify he could significantly impact the constitutional due process rights of the other Guarino Defendants with whom he is associated. This risk, no matter how remote, is too great to take in light of the burden it would impose on the Guarino Defendants. Because Mr. Guarino's inability to testify in the Guarino Adversary is directly related to the Criminal Proceeding, the court concludes that the matters significantly overlap.

As for the remaining *Walsh* factors, this court notes that Mr. Guarino has already been indicted so there will not be an undue delay. As stated by Mr. Guarino's counsel, hearings continue and Mr. Guarino has been present at each one. The potential prejudice to the Bank, Mr. Guarino and the other Guarino Defendants without Mr. Guarino's involvement is more

---

[3] This does not mean that the Bank will not be able to adequately defend itself should Guarino prevail in invoking his Fifth Amendment privilege against testifying on the Bank's behalf. The Bank has had the opportunity to develop its defense and chooses to rely on Mr. Guarino as part of its case. If Mr. Guarino fails to cooperate with the Bank once his concerns in the Criminal Proceeding have been addressed, the Bank cannot claim it cannot defend itself. Such gamesmanship will not be tolerated.

[4] As with the Bank, this does not mean that the Guarino Defendants will not be able to adequately defend themselves should Mr. Guarino prevail in invoking his Fifth Amendment privilege against testifying on behalf of the Guarino Defendants. They must defend themselves as is necessary, with or without Mr. Guarino's cooperation. No gamesmanship will be tolerated.

significant than the prejudice a delay would cause to the Trustee. Any potential prejudice to the Trustee can be remedied by further order of the court. This court believes that it would be in its best interest as well as the best interest of all the parties in these matters to litigate these cases at a time when a full set of facts can be presented and a record created. Having Mr. Guarino simply plead the Fifth Amendment while on the stand and in pleadings does not achieve this result.

Finally, it would not be against the public interest to stay the adversary proceedings. Protection of an individual's constitutional and due process rights is fundamentally in the public interest. Moreover, the court can temporarily stay the matters to allow Mr. Guarino to defend himself in the Criminal Proceeding while at the same only having a temporary impact on the adversary proceedings. The court is not convinced by the Trustee's argument that a stay of the adversary proceedings would work damage on the Trustee to a degree commensurate with the clear hardship or inequity that may result if Mr. Guarino were compelled to respond and/or unable to respond due to the potential impact any response would have on his Fifth Amendment right against self-incrimination.

## **Conclusion**

As a result of the foregoing, the court will grant the Motions in the Bank Adversary and the Guarino Adversary for a stay. Mr. Guarino's counsel has averred how absurd the Criminal Proceeding is, suggesting that the matter may be resolved rather quickly. To that end, the court will grant the stay until April 28, 2015. Until then, the court shall require Mr. Guarino to submit monthly status reports of the Criminal Proceeding by the 20th day of each month starting January 20, 2015. The failure to do so may result in a lifting of the stay. The court will conduct a status conference on April 28, 2015 at 2:00 p.m. to determine whether the stay should continue beyond that date. The parties may submit comments by April 14, 2015.

The court's Order is attached hereto.